**UNION PACIFIC RAILROAD COMPANY, Appellant,**

v.

**Seymore WILLIAMS, Appellee.**

No. 12–99–00384–CV.

Court of Appeals of Texas, Tyler.

Feb. 14, 2001.

Kim Whittington, Houston, for appellant.

Stephen Evans, Palestine, David Furlow, Houston, for appellee.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

LEONARD DAVIS, Chief Justice.

Union Pacific Railroad Company ("the railroad") appeals the trial court's judgment in favor of a railroad worker, Seymore Williams ("Williams"), for damages caused by its negligence. The railroad raises three issues concerning foreseeability. We affirm.

## BACKGROUND

Williams was working at the site of a derailment, where he was laying new tracks. A company hired by the railroad to clean up derailments began dragging a derailed car across tracks a disputed 25 to 70 feet away from Williams. The railroad car was pulled over a signal mast. The pressure caused a metal rain cap on the top of the signal mast to blast through the air, hitting Williams in the back.

Since the defendant was a railroad, and the plaintiff was a railroad worker, the action was brought under the Federal Employers' Liability Act ("FELA"). At trial, when the railroad was trying to prove that this was a "freak accident," and that something like this had never happened before, and was thus unforeseeable, Williams objected on relevance grounds. The trial court overruled his objection. A few minutes later, the trial judge stated the following:

> The question was asked of the witness if he had ever heard of a prior incident, as I understand it, involving a clean-up. The law in FELA cases does not include the element of foreseeability, therefore the objection is sustained, and I with-

draw my prior ruling. You will disregard that question and answer." At the charge conference, the railroad requested an instruction on foreseeability, which the trial court denied. The jury found in favor of Williams and awarded him damages in the amount of $414,836.75, after credits and offsets.

In three issues, the railroad has complained that there was no evidence that it did or could have foreseen this type of risk, that the trial court erred when it "instructed" the jury that foreseeability was not an element in an FELA case, and that the trial court erred when it refused the railroad's proffered jury charge instruction on foreseeability.

## FELA AND FORESEEABILITY

When FELA cases are brought in state court, federal law governs the substantive rights of the parties and state rules govern procedural matters. *St. Louis Southwestern Ry. Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303 (1985). Under federal law, a railroad carrier is liable for damages to its employees who suffer an injury "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliance ... or other equipment." 45 U.S.C.A. § 51 (West 1986). Although grounded in negligence, the FELA does not define negligence. *See Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949). Courts applying and interpreting the statute have held that an FELA plaintiff must prove the common law components of negligence, including duty, breach, foreseeability, causation, and injury. *See Adams v. CSX Transp. Inc.*, 899 F.2d 536, 539 (6th

Cir.1990). Section 51 of the FELA, however, departs from the common law in the area of causation by establishing a standard of "in the whole or in part" causation which replaces the common law standard of proximate causation. *See Rogers v. Missouri Pac. R.R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957); *Nicholson v. Erie R.R. Co.,* 253 F.2d 939, 940 (2d Cir.1958). However, *Gallick v. Baltimore & Ohio R.R. Co.,* 372 U.S. 108, 117, 83 S.Ct. 659–665, 9 L.Ed.2d 618 (1963), makes it clear that reasonable foreseeability of harm insofar as it relates to duty is still an essential ingredient of FELA negligence.

### No Evidence Standard of Review

■■■■ In its first issue, the railroad has complained that there was no evidence that it did or could foresee the type of event which occurred in this case. In determining a "no evidence" issue, we are to consider all of the evidence in the light most favorable to the party in whose favor the judgment has been rendered, and to indulge every reasonable inference from the evidence in that party's favor. *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 48 (Tex. 1998). If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). A "no evidence" issue may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997) (*citing* Robert W. Calvert,

"No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L.Rev. 361, 362–63 (1960)). There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact. *Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992).

### Analysis

■■■■ In Texas, the existence of a duty is a question of law for the court. *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex. 1998). In conducting a duty analysis, the court must balance the risk, foreseeability, and likelihood of injury against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Read v. Scott Fetzer Co.,* 990 S.W.2d 732, 736 (Tex.1998). Among these factors, foreseeability has traditionally been considered the most significant. *See Genell, Inc. v. Flynn,* 163 Tex. 632, 358 S.W.2d 543, 546–47 (1962). In the absence of foreseeability, there is no duty. *NationsBank, N.A. v. Dilling,* 922 S.W.2d 950, 954 (Tex.1996). In the instant case, the railroad does not complain of no duty in general, but that there is no evidence of foreseeability in the context of duty.

■■■■ The Supreme Court has repeatedly stated that "foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable." *Mellon Mortgage Co. v. Holder,* 5 S.W.3d 654, 655 (Tex. 1999). It is not required that the particular accident complained of should have been foreseen. All that is required is that (1) the injury be of such a general character as might reasonably have been anticipated, and that (2) the injured party should be so situated with relation to the

wrongful act that injury to him or to one similarly situated might reasonably have been foreseen. *Id.*

In the context of FELA cases, the FELA requires railroad employers to use "reasonable care in furnishing their employees with a safe place to work." *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 550, 114 S.Ct. 2396, 2408, 129 L.Ed.2d 427 (1994). Consequently, the railroad had a non-delegable duty to provide Williams with a safe work place at the derailment where he was injured. *See id.* A railroad may be liable for failure to provide a safe workplace "when it knows or should know of a potential hazard in the workplace, yet fails to exercise reasonable care to inform and protect its employees." *Syverson v. Consolidated Rail Corp.,* 19 F.3d 824, 826 (2nd Cir.1994), *quoting, Gallose v. Long Island R.R.,* 878 F.2d 80, 84–85 (2nd Cir.1989). Foreseeability does not require proof, however, that a similar incident had already occurred. *See Gallick,* 372 U.S. at 121, 83 S.Ct. at 668.

At the trial of this case, Willfred Foehrs, the railroad's employee, testified on behalf of Williams. He testified that he had been a company foreman for two and a half years prior to trial and had worked for the railroad for the preceding twenty-five years. On the day in question, he was working with a separate labor gang from Williams, but in the same area. Foehrs witnessed Williams's injury and described it in detail to the jury. He also stated the following:

Q: Was it a dangerous place, the derailment site?

A: Yes, sir, very much so.

Q: What is that?

A: Well, you can from hazardous cars to—well, railroad in general is hazardous. Pulling cars away from areas can sometimes break a rail or—

and objects from the rail I've seen fly through the air.

Q: You've seen pieces of rail, broken rail fly off—

A: Oh, yes, sir.

. . .

Q: I'm sorry, I didn't get your answer.

A: I've been to several different derailments over the years where you can hang a rail, bend it, stuff that can catch it and break it, and pieces of rail fly off anywhere from 20 to 30 [feet] and even further.

Q: And you have seen cables snap and break at derailments?

A: Oh, yes, yes.

. . .

Q: Had you before this incident happened to Mr. Williams made any suggestion to anybody that you move away from the derail?

A: Yeah. I made the suggestions to the other foremans that maybe we need to move out of the area until they get this car moved because I had looked up and they were fixing to move it. And in the process of doing this, talking to one of the foreman, that's when they started moving the car.

Q: And was the suggestion made you felt you were too close?

A: Yeah, that's exactly.

The railroad's track foreman Charles Butler testified as follows:

Q: Okay. Are these caps at the bottom of the hopper car?

A: Yes.

Q: When they're dragging it onto the rail, if the bottom of the cap was to get crunched, could it explode one of these caps off?

A: Yes, it could.

**306**

And Dale Pecaut, the railroad's Director of Track Maintenance stated the following:

Q: Okay. You think when you're moving a car that has an object underneath it such as a signal mast that twenty feet is too close to be working with your back turned to that move?

A: Yes.

Pecaut also testified that he had previously seen cables break at derailments from the pressure of dragging cars over them, and that snapping cables are dangerous.

We hold that the above testimony constitutes some evidence that it was foreseeable to the railroad that injuries would result from the impact of a tension pressure-propelled object at a derailment site. The trial court did not err, therefore, when it found that the railroad had a "duty" under these circumstances as a matter of law. We overrule issue one.

### "INSTRUCTION" TO THE JURY DURING TRIAL

In its second issue, the railroad has contended that the judge's statement during trial that foreseeability was not an element of an FELA action constituted reversible error. However, the railroad never raised this issue until it filed a motion for new trial. Rule 33.1 of the Texas Rules of Appellate Procedure requires a party complaining of error to prove that it made the trial court aware of the alleged error by making a timely, specific objection and securing a ruling. At the very least, the railroad should have raised its objection or submitted its request before the case was submitted to the jury, when any misstatements could still have been corrected. Accordingly, we overrule issue two.[1]

### CHARGE ERROR

In its third issue, the railroad has alleged that the trial court erred when it refused to submit a requested instruction on foreseeability. A party is entitled to a jury question, instruction, or definition if the issue is raised by the pleadings and the evidence. See TEX.R. CIV. P. 278. Because instructions are intended to aid the jury in rendering a just and proper verdict, a trial court should submit instructions only when it determines that the instructions will help the jury understand the meaning and effect of the law. See McReynolds v. First Office Mgt., 948 S.W.2d 342, 344 (Tex.App.Dallas 1997, no writ). An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and the evidence. See TEX.R. CIV. P. 278. When the trial court refuses a requested instruction on the ground that the request is unnecessary, the abuse of discretion standard applies. See Vinson & Elkins v. Moran, 946 S.W.2d 381, 405 (Tex.App.-Houston [14th Dist.] 1997, writ dism'd by agrmt.).

As we noted earlier, the element of duty is traditionally one of law. However, two FELA cases indicate that if duty is contested, it may be a matter for the jury. See H.W. Mitchell v. Missouri–Kansas–Texas R. Co., 786 S.W.2d 659, 662 (Tex. 1990) (the existence of duty is a question of law when all of the essential facts are undisputed; but when the evidence does not conclusively establish the pertinent facts or the reasonable inferences to be drawn therefrom, the question becomes one of fact for the jury); R. Scott Houghton v. Port Terminal R. Assoc., 999 S.W.2d 39, 45 (Tex.App.Houston [14th

---

1. We note that even though the trial court made this statement, the railroad was allowed to bring in substantial evidence that an incident such as the one in question, had never happened before, was a "freak accident," and was therefore unforeseeable.

Dist.] 1999, no writ) (when the issue of duty is not contested, a requested instruction is not necessary to enable the jury to render a proper verdict). However, if as the railroad contends, duty is a question for the jury, the submitting party must proffer a substantially correct instruction. "Failure to submit a[n] ... instruction shall not be deemed a ground for reversal ... unless a substantially correct ... instruction has been requested in writing and tendered by the party complaining of the judgment." TEX.R. CIV. P. 278.

The railroad submitted an instruction on foreseeability as follows: "Before you may find a railroad liable for an injury of an employee resulting from a defective condition in equipment or his place of work, you must be satisfied that the railroad had either actual or constructive notice of the defective condition and that it had a reasonable opportunity to remove or repair the defect before the occurrence involved in this action."

In *H.W. Mitchell,* the defendant railroad offered the following instruction:

> In answering this issue, you are instructed that, before negligence, if any, can be established against the Defendant, Railroad, it must be shown that the Defendant–Railroad, through its officers, agents and/or employees, knew, or, in the exercise of ordinary care, should have known of an unsafe condition, if any.

*H.W. Mitchell,* 786 S.W.2d at 660. Mitchell argued that this instruction violated his federal substantive rights under the FELA by placing the issue of foreseeability before the jury. *Id.* The supreme court agreed. The court held that the instruction forced the plaintiff to prove foreseeability in order to establish causation and thereby caused a greater burden to be placed on the plaintiff than is permitted under the FELA. *Id.* The court explained:

> [T]he question of the employer's knowledge may be one for the jury; however, in this case, the instruction confused the issue of foreseeability relating to duty with the concept of causation. This confusion effectively forced Mitchell to prove foreseeability in order to establish causation, in clear violation of the substantive requirements of the FELA. This improper jury instruction was harmful and constitutes reversible error.

*Id.* at 662. The court further suggested that a proper, succinct and well-drafted instruction for such cases in Texas is found in the *Pattern Jury Instructions* for FELA cases adopted by the Judicial Counsel of the Fifth Circuit. We note that in the instant case, the court used the Fifth Circuit instruction on negligence almost verbatim.

In comparing the proffered instruction in this case with the instruction which the supreme court disapproved in *H.W. Mitchell,* we note that they are substantially similar. Consequently, the instruction in the instant case would have caused confusion, would have neither assisted the jury, nor accurately stated the law. We hold, therefore, that the trial court did not err when it denied the railroad's instruction on foreseeability. Accordingly, we overrule issue three.

We affirm the judgment of the trial court.